IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KIN CU THI LE,

    Plaintiff,                      No. CIV S-05-2569 GGH

    vs.

MICHAEL J. ASTRUE,[1]
Commissioner of Social
Security,
                                            ORDER

    Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment is DENIED, the Commissioner's Motion for Summary Judgment is GRANTED, and the Clerk is directed to enter judgment for the Commissioner.

BACKGROUND

        Plaintiff, born February 2, 1949, applied for disability benefits on October 10, 2003. (Tr. at 43.) Plaintiff alleged she was unable to work since January 1, 2000, due to bilateral

---

[1] Michael J. Astrue became Commissioner on February 12, 2007. Accordingly, he should be substituted as defendant in this suit. Fed. R. Civ. P. 25(d)(1). No further action need be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

knee pain, insomnia, chronic chest pain, hypertension, and cardiomegaly.  (Tr. at 53, 110.)

In a decision dated June 21, 2005,[2] ALJ L. Kalei Fong determined that plaintiff was not disabled.[3]  The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 2. The claimant's mild degenerative osteoarthritis of the knees and dysthymic disorder are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(c).
>
> 3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 4. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set

---

[2] The actual decision is undated.  (Tr. at 21.)

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

|   |   |   |
|---|---|---|
| 1 |   | forth in the body of the decision. |
| 2 | 5. | The claimant has the following residual functional capacity: lift 50 pounds occasionally and 25 pounds frequently, walk/stand six hours, sit six hours, and occasionally climb, kneel and crawl. She has no manipulative, visual, communicative, environmental, mental or other postural limitations. |
| 6 | 6. | The claimant's past relevant work as babysitter did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 416.965). |
| 8 | 7. | The claimant's medically determinable mild degenerative osteoarthritis of the knees and dysthymic disorder do not prevent the claimant from performing her past relevant work. |
| 10 | 8. | The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 416.920(f)). |

(Tr. at 20.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Failed to Consider All of Plaintiff's Impairments Under Step Two; B. Whether the ALJ Failed to Provide Specific or Legitimate Reasons for Rejecting Plaintiff's Treating Physicians; C. Whether the ALJ Failed to Credit Plaintiff's Testimony and the Testimony of Her Daughter; and D. Whether the ALJ Should Have Used a Vocational Expert Due to Her Significant Non-exertional Impairments.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

3

1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

   A. The ALJ Did Not Err in Failing to Find All of Plaintiff's Impairments to be Severe Impairments

Plaintiff first contends that in considering plaintiff's impairments at step two, the ALJ found only plaintiff's mild degenerative osteoarthritis of the knees to be a severe impairment.[4]  He did not find the following to be severe impairments:

> arthritis of the joints, pain in the knees and back, required to use an assistive device to ambulate, very restricted range of motion in both knees, compartmental narrowing, inability to push or pull with her lower extremities, limited to occasionally crawling, kneeling, climbing, pain in the neck, cardiomegaly, low lung volumes, dysthymic disorder, depression, short temper, low energy, impaired concentration and memory, numbness of the lower extremities, inability to stand, walk or sit for more than an hour, severe headaches, postmenstrual syndrome, osteoarthritis, osteoporosis, extreme obesity, degenerative spondylosis changes in the thoracic [sic] spine, degenerative arthritis, degenerative disc disease, hypertension, insomnia, chronic chest pain, pain and weakness of the legs, pelvic pain, epigastric tenderness, inability to walk more than a short distance, inability to carry any but very light objects, totally restricted in her ability to climb stairs or scaffolds, restricted in bending, required more than normal rest periods during the day, difficulty breathing, experienced moderate to severe pain not completely controlled with narcotics and other multiple medications, limited in her ability to understand and remember detailed instructions, limited in her ability to carry out detailed instructions, limited in her ability to maintain attention and concentration for extended periods, neuropathy, not able to perform the complete range of sedentary work, inability to sit without interruption for less than one hour and a total of two to four hours during an eight hour day, inability to walk/stand for

---

[4] The ALJ also found plaintiff's dysthymic disorder to be a severe impairment. (Id. at 20.)

4

less than an hour without interruption and a total of two to four hours during an eight-hour day, inability to carry of lift objects because of pain in both her wrists.

(Plaintiff's Mot. at 1.)

At the second step of the disability analysis, an impairment is not severe only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). At this step, the ALJ may decline to find a severe impairment "*only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original).

The ALJ only found plaintiff's mild degenerative osteoarthritis of the knees and dysthymic disorder to be severe. He rejected numerous other claimed severe impairments for various reasons.

At the outset, it should be noted that plaintiff can only establish an impairment if the record includes signs – the results of "medically acceptable clinical diagnostic techniques," such as tests – as well as symptoms, i.e., plaintiff's representations regarding his impairment. Ukolov v. Barnhart, 420 F.3d 1002, 1004-1005 (9th Cir. 2005). Here, plaintiff has referred to almost a page of various ailments which are only symptoms, such as restricted range of motion in knees, inability to push or pull with the lower extremities, pain in the neck, low lung volumes, and short temper.

Furthermore, other claimed severe impairments, such as postmenstrual syndrome, are not disabling impairments. Although obesity may sometimes be considered a severe impairment, plaintiff has not shown that it impairs her functioning in this case. It is only

5

mentioned in the medical records twice in passing. Plaintiff's physicians did not tell her to lose weight, or treat it in any way. This impairment was not developed by plaintiff. (Tr. at 154, 155.) This issue is addressed more fully in the next section *infra*.

This example highlights plaintiff's very cursory contention that she suffers from the above severe impairments, with no transcript page references for any of the alleged severe impairments, other than a separate section describing the medical records. Plaintiff makes no argument whatsoever in support of her contentions, such as how each of these impairments affects her ability to do work activities. Therefore, plaintiff has not met her burden. See Bowen v. Yuckert, supra, 482 U.S. at 146, n.5.

B. Whether the ALJ Failed to Provide Specific or Legitimate Reasons for Rejecting Plaintiff's Treating Physicians

Plaintiff claims that the ALJ erred in rejecting the opinion of plaintiff's treating physicians, Drs. Le, Hoang, and Leba.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[5] Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

\\\\\

To evaluate whether an ALJ properly rejected a medical opinion, in addition to

---

[5] The regulations differentiate between opinions from "acceptable medical sources" and "other sources." See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e). For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources." Id. Medical opinions from "acceptable medical sources," have the same status when assessing weight. See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d). No specific regulations exist for weighing opinions from "other sources." Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

6

considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons. Lester, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir. 2001),[6] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

In this case, the ALJ rejected the opinion of Dr. Le that plaintiff had a walking limitation, severe pain, and weakness of the legs because the only clinical finding in regard to the knee was tenderness, x-rays of the knees indicated only mild degenerative osteoarthritis, and treatment was limited to mild pain medication.[7] (Tr. at 15.) The ALJ specifically pointed out that Dr. Le did not send plaintiff to physical therapy, a specialist, or a pain clinic. (Id.)
\\\\\

The ALJ additionally rejected any finding of chest pain, hypertension or

---

[6] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

[7] Plaintiff was taking 600 mg. of Ibuprofen for this problem. (Tr. at 112, 139.)

7

cardiomegaly as Dr. Tran's records indicated no treatment for these conditions, and chest x-rays indicated the cardiomegaly was only borderline. Furthermore, the ALJ noted that consulting physician Dr. Miller did not support Dr. Le's findings in this regard, which were also inconsistent with the State Agency's determination. (Id.)

The x-ray of plaintiff's knees indicated only mild degenerative osteoarthritis. (Tr. at 119.) Dr. Le's statement that plaintiff was disabled as a result of this impairment is inconsistent with its severity. (Id. at 124-25.) Furthermore, if plaintiff's condition were this severe, it would seem that Dr. Le would have recommended treatment beyond a mere prescription for Bextra, Motrin or Celebrex. For example, Dr. Le should have told plaintiff to lose weight because as noted, he remarked that she was very obese. (Id. at 155.) Weight loss, as well as exercise, heat and cold treatments, physical therapy, and surgery are other treatment options that were not recommended. See www.nlm.nih.gov/medlineplus. Steroid injections were apparently considered, but plaintiff did not follow through. (Tr. at 143.)

In regard to chest pain and cardiomegaly, x-ray indicated only mild cardiomegaly and low lung volumes, with no other abnormalities. The lung volume presumably was attributed to a diagnosis of bronchitis which was the reason for the x-ray. (Tr. at 150.) As cardiomegaly[8] is a sign only, and chest pains are symptoms, they are not diagnoses, and it is therefore not necessary to discuss them. See www.MayoClinic.com (signs such as these which are not diseases in and of themselves, may be symptomatic of an underlying problem, such as high blood pressure, among other disorders).

In addition to the fact that Dr. Le's basis for a finding of disability due to chronic chest pain, hypertension, cardiomegaly, and severe knee pain, is inconsistent with the records, a physician's opinion on the ultimate finding of disability is not required to be accepted by the ALJ. "A statement by any physician that the claimant is disabled or unable to work is a

---

[8] Cardiomegaly is an abnormal enlargement of the heart. Www.MayoClinic.com.

8

conclusion on the ultimate issue to be decided . . . and is not binding on the [ALJ] in reaching his determination as to whether the claimant is disabled within the meaning of the [Act]." Murray v. Heckler, 722 F.2d 499 (9th Cir. 1983), (citing Burkhart v. Bowen, 856 F.2d 1335 (9th Cir. 1988), 20 C.F.R. §§ 404.1527 and 404.927); accord, Magallanes v. Bowen, 881 F.2d 747, 750-51 (9th Cir. 1989).

Plaintiff contends that the ALJ did not address Dr. Le's other diagnoses of obesity, insomnia, severe spondylosis of the thoracic spine, headaches, hypertension, or neck and back pain. As discussed in the previous section, plaintiff did not sufficiently develop her obesity to make it an issue. Dr. Le only mentioned obesity twice in pro forma notes while conducting an exam, and made in reference to plaintiff's general presentation. Dr. Le did not attempt to treat this condition. (Tr. at 154, 155.) These two notes comprise the sum total mention of obesity in the record. Plaintiff's various filings with the Social Security Administration did not raise obesity as an impairment, and plaintiff's statement of facts and points and authorities point only to these two cursory references in the record. (Tr. at 53; Plaintiff's Mot. at 4.) In her various forms submitted to the Social Security Administration, plaintiff identified only knee and leg pain, headaches, and difficulty breathing, as the impairments that affected her ability to work. (Tr. at 35, 36, 53, 90.) Neither she nor her counsel ever formally attempted to change this description.

Moreover, plaintiff had counsel at her hearing, yet he did not question her or her daughter about her obesity, other than to ask her how much she weighed, to which she responded that she did not know. (Tr. at 225.)

Although SSR 02-01p makes clear that obesity is a disease that must be considered when evaluating disability, and the "combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately," the ALJ "will evaluate each case based on the information *in the case record*." (Id.) (emphasis added). The ALJ is not omniscient, and was not required to evaluate plaintiff's obesity based on the non-existent record of obesity presented here. In any event, the ALJ did consider this

1 condition, but found that the SSA did not assess any limitations on this basis, and there were no
2 diagnostic studies ordered because of it. (Tr. at 19.) If plaintiff was serious about her obesity as
3 being a qualifying circumstance for disability, she and her counsel should have done more to
4 make it an explicit issue throughout the administrative proceedings.

5 Contrary to plaintiff's assertion that the ALJ did not discuss Dr. Le's treatment of
6 insomnia, the ALJ specifically rejected this ailment, as well as headaches and hypertension. (Tr.
7 at 19.) He found that these complaints were not credible. There was minimal evidence of
8 treatment for headaches, and no diagnostic studies or referral to a specialist for this problem.
9 (Id.) The ALJ also noted that no limitations were assessed by the SSA doctors for these
10 complaints, and there was no evidence of end organ damage due to hypertension or evidence that
11 it was uncontrolled.[9] Exams did not document fatigue or sleep deprivation. In regard to these
12 and other complaints, the ALJ also noted the lack of treatment, especially by specialists, the lack
13 of emergency room visits or other hospitalizations, a dearth of clinical findings or diagnostic
14 studies, and that Dr. Miller's evaluation indicated there were no clinical findings to support these
15 complaints. (Id.)

16 As for plaintiff's complaint that the ALJ did not discuss her severe spondylosis of
17 the thoracic spine, or neck and back pain, he did address these complaints but discounted them.
18 Although the record shows "degenerative spondylosis changes in the thoracic spine of a

19 \\\\\
20 \\\\\

---

[9] Plaintiff argues that the ALJ erroneously stated that plaintiff was not treated for hypertension, citing Dr. Tran's records. Dr. Tran treated plaintiff and prescribed Atenolol for this condition. (Tr. at 115, 118.) Nevertheless, a condition which can be controlled or corrected by medication is not disabling. See Montijo v. Secretary of HHS, 729 F.2d 599, 600 (9th Cir.1984) (Addison's Disease controlled with medications deemed not disabling); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir.1983) (rib condition controlled with antibiotics not considered disabling).

moderately severe degree," by a chest x-ray,[10] and Dr. Le diagnosed this ailment, the ALJ noted that a muskuloskeletal report in November, 2003 was normal except for tenderness in the knees. (Id. at 150, 137, 120-22.)  The ALJ also referred to Dr. Parsons' report which indicated tenderness in the neck and back only one time during this treatment period. (Id. at 18, 137-61.) This report which plaintiff states is actually one by Dr. Le, indicates that plaintiff only complained once of this upper back problem during this treatment period. (Id. at 140.) X-ray of the cervical and lumbar spine on November 17, 2003 was normal. (Id. at 156.)

In regard to Dr. Hoang, the ALJ rejected him for the following reasons:

> The undersigned cannot give controlling weight to Dr. Hoang's medical opinions as to her physical capability as he did not append records to the assessment to support his diagnoses; it is inconsistent with the SA determinations; it is inconsistent with Dr. Miller's CE; it is not consistent with x-rays of her knees which showed only mild degenerative osteoarthritis; it is not supported by the examinations from treating physicians; and it is rejected as there are no EMG/NCS studies to document neuropathy, no hospitalizations, no emergency room treatment, no physical therapy, no treatment at a pain clinic, and no pain injections. Given these factors the undersigned can only accord minimal weight to Dr. Hoan's [sic] medical opinions.

(Tr. at 16.) (citations to record omitted.)

Dr. Hoang completed a medical assessment of ability to do work-related activities on May 8, 2005. He concluded that plaintiff could stand or walk less than one hour without interruption and two to four hours total in a work day. (Id. at 196.) She could sit less than an hour without interruption and two to four hours total in a work day. (Id.) She could lift less than five pounds frequently and five to ten pounds occasionally. (Id. at 197.) This assessment was based on arthritis and neuropathy due to pain in the knee joints. (Id. at 196.) Although Dr. Hoang was a treating physician, this is the sum total of records submitted by him. The ALJ was correct in discounting this opinion which consists of a check marked form. See Murray v.

---

[10] It should be noted that the purpose of this x-ray was due to bronchitis with chest pain, not due to pain in the thorax. (Id. at 150.)

Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports).

Plaintiff argues that she should not be penalized for the ALJ's failure to complete the record with this treating physician's records, and that it was his obligation to obtain the records if he noticed they were missing. Nevertheless, plaintiff was represented by counsel at the hearing and is not mentally ill, so that the ALJ's duty is not heightened in this regard. Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001).[11] In any event, it appears that plaintiff had just started seeing Dr. Hoang the month before the hearing, and was only seeing him twice a month. (Id. at 224.) Therefore, there would appear to be only a few missing records.

The ALJ properly relied on the consulting opinion of orthopedic surgeon Dr. Miller rather than treating physicians Le and Hoang. Dr. Miller examined plaintiff on December 18, 2003. He first noted that although plaintiff walked with a cane, she did not medically need one as she displayed "greatly exaggerated pain on motion and ambulation." (Id. at 129, 135.) This physician continually made such notations, including "extremely poor effort on grip strength on both sides." (Id. at 130.) He also stated: "the patient walks with exaggerated limp in both legs with and without cane. There is evidence of severe amplification and voluntary guarding. I do not believe that the cane is a medical necessity." (Id. at 130.) Range of motion in all areas was normal, except in the knees which was 5-90% on flexion and 5% on extension. There was tenderness and pain on motion although greatly amplified and not consistent as there was no increased heat, crepitation, swelling or redness. There was voluntary guarding on range of motion testing. (Id. at 133.) Diagnosis was mild osteoarthritis in both knees, which was confirmed by x-rays. Once again, Dr. Miller rendered this diagnosis with the caveat: "greatly exaggerated and amplified with severe functional overlay and exaggeration. The cane is not a medical necessity in my opinion." (Id. at 135.) In regard to plaintiff's functional capacity, Dr.

---

[11] See also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir.1996) (ALJ has duty to develop the record even when claimant is represented).

12

1  Miller concluded that plaintiff could lift and carry 30 pounds frequently and 40 pounds
2  occasionally, push and pull 45 pounds frequently and 55 pounds occasionally. She could stand
3  and walk for six hours total a day, non-continuous. Climbing was restricted and crawling was
4  slightly restricted. There were no other restrictions. (Id.) Dr. Miller's evaluation is consistent
5  with that of the State Agency report. (Id. at 162-69.)

6  "Where the opinion of the claimant's treating physician is contradicted, and the
7  opinion of a nontreating source is based on independent clinical findings that differ from those of
8  the treating physician, the opinion of the nontreating source may itself be substantial evidence; it
9  is then solely the province of the ALJ to resolve the conflict." Andrews v. Shalala, 53 F.3d 1035,
10 1041 (9th Cir. 1995), citing Magallanes, 881 F.2d at 751.

11 In regard to the ALJ's rejection of Dr. Leba's opinion in regard to plaintiff's
12 mental status, the ALJ opined that this psychiatrist treated her only in 2005 and there was no
13 evidence in his records that her disorder lasted or was expected to last twelve months. (Id. at 16.)
14 The records of other doctors, including Tran and Miller, did not reference a mental condition.
15 Nor did plaintiff's application reveal a mental problem. (Id.)

16 Records for Dr. Leba indicate treatment of plaintiff from March 10, 2005 to May
17 2, 2005. (Id. at 188-96.) He diagnosed dysthymic disorder. (Id. at 190.) He found that plaintiff
18 was slightly limited in remembering locations and work-like procedures, being able to perform
19 activities in a schedule and maintain regular attendance, sustaining an ordinary work routine,
20 completing a work day without interruptions due to psychological symptoms, accepting
21 instructions and responding appropriately to criticism from supervisors, responding to
22 appropriate changes in the work setting, being aware of normal hazards and taking precautions,
23 traveling to unfamiliar places, and setting realistic goals. (Id. at 188-90.) Plaintiff was found to
24 be slightly to moderately limited in understanding and remembering detailed instructions,
25 carrying out detailed instructions, and maintaining attention and concentration. (Id. at 188.)
26 \\\\\

Plaintiff argues that the definition of dysthymic disorder encompasses the requirement that it has lasted two years and therefore the ALJ erred in finding that there was no documentation that it was expected to last or had lasted twelve months. Other than plaintiff's own statements, which will be dealt with in the next section, there is no other evidence that this disorder was expected to last twelve months. The ALJ was free to reject it.

The ALJ gave specific and legitimate reasons to reject the opinions of Drs. Le, Hoang, and Reba, which are supported by substantial evidence in the record.

### C. The ALJ Did Not Err in Rejecting Plaintiff's Credibility

Plaintiff contends that the ALJ erred in rejecting her testimony regarding the nature and extent of her impairments and symptoms.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ who used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc). The ALJ may not find subjective complaints incredible solely because objective medical evidence does not quantify them. Id. at 345-46. If the record contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47. The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

\\\\\

and (3) daily activities.[12]  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct, may also be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990).  Absent affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony must be clear and convincing.  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

In this case, there was affirmative evidence of malingering, as noted by the ALJ in the previous section.  Dr. Miller's evaluation was replete with notations of malingering and exaggeration.  (Id. at 129-35.)  As a result, the ALJ's reasons to reject plaintiff's testimony are not required to be clear and convincing.

The ALJ gave clear and convincing reasons in any event.  She first noted that there was only limited mental health treatment in 2005, and none before that time.  (Id. at 17.)  She also discounted her complaints of pain based on Dr. Miller's aforementioned report, as well as the SA determination that she could perform medium work, normal exams by Drs. Tran and Le evidencing only tenderness in the knees, x-rays showing only mild degenerative osteoarthritis, borderline cardiomegaly, and normal spine and cervical spine.  (Id. at 18-19.)  The ALJ also pointed out that plaintiff had not undergone treatment for pain other than medication.  She had no physical therapy, pain injections, referral to pain clinic or a specialist, minimal treatment for

---

[12] Daily activities which consume a substantial part of an applicants day are relevant. "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.  One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quotation and citation omitted).

15

headaches, no prescription for a cane, and no surgery. (Id. at 19.) Although plaintiff made other complaints, such as shortness of breath, hypertension, fatigue, elbow and wrist problems, dizziness, and obesity, there was little treatment for these problems, no diagnostic studies or clinical findings, and no limitations related to these complaints. (Id.) The ALJ was free to rely on medical evidence of plaintiff's mental health rather than her testimony. Fair, 885 F.2d at 604.

As discussed here and in the preceding sections *supra*, the ALJ's analysis of plaintiff's credibility was appropriate and supported by substantial evidence in the record.

### D. Testimony of Plaintiff's Lay Witness

Plaintiff also takes issue with the ALJ's treatment of lay testimony by plaintiff's daughter. An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). Similar to the ALJ's role in evaluating the testimony of a claimant, when evaluating the testimony of a lay witness "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The Ninth Circuit has recently held that the ALJ must properly discuss lay witness testimony, and that any failure to do so is not harmless unless no reasonable ALJ, when fully crediting the testimony, could have come to a different disability determination. Stout v. Commissioner, 454 F.3d 1050 (9th Cir. 2006).

In this case, the ALJ found that the testimony of plaintiff's daughter was not fully supported by the objective evidence as previously outlined. (Id. at 19.) The ALJ did discuss the testimony which she summarized as follows:

16

> The witness testified that she helps her mother every day in the morning; that she has been so ill for the past three years that she has required assistance; that the claimant cannot get up without help; she does the shopping for her mother but her mother pays the bills but helps when needed; and that her mother's biggest complaints were her knees, hands, headaches, and difficulty sleeping at night.

(Id. at 17.)

The ALJ was not required to repeat all the same reasons why she rejected plaintiff's testimony in regard to plaintiff's daughter. It was permissible to refer to them. Pursuant to Stout, this court finds that based on Dr. Miller's report, discussed *supra*, any failure of the ALJ to more fully discuss this witness' testimony was harmless as no reasonable ALJ could have come to a different disability determination.

E. <u>Whether the ALJ Should Have Used a Vocational Expert Due to Her Significant Non-exertional Impairments</u>

Plaintiff contends that the ALJ should have called a vocational consultant to determine whether she could perform her past work as babysitter, due to her inability to speak English, dysthymic disorder, obesity, hypertension, insomnia, severe headaches, chronic chest pain, and severe pain and weakness in her legs.

The ALJ found that plaintiff could do her past work, despite mild degenerative osteoarthritis of the knees and dysthymic disorder.

Plaintiff bears the burden of proving he suffers from a physical or mental impairment that makes him unable to perform "past relevant work." Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir.1995). Plaintiff cannot merely show he is incapable of performing the particular job he once did; he must prove he cannot return to the same type of work. Villa v. Heckler, 797 F.2d 794, 798 (9th Cir.1986). In determining whether a disability applicant can perform past work, the Commissioner may consider work as it was actually performed, or as it is normally performed in the national economy. The ALJ determines the demands of a past job and compares the demands to current RFC. Villa, 797 F.2d at 798.

1  Plaintiff cites Bruton v. Massanari, 268 F.3d 824 (9th Cir. 2001), for the
2  proposition that use of a vocational expert is mandatory where there is evidence of non-
3  exertional impairments. That case, however, analyzed this issue at step five of the sequential
4  analysis:

> Our circuit has clearly delineated when it is appropriate for the Commissioner to rely on the grids in meeting the burden under Step Five of the five-part disability inquiry. [FN1 omitted] We have held that "[t]he Commissioner's need for efficiency justifies use of the grids at step five" but only when the grids "*completely* and *accurately* represent a claimant's limitations." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir.1999) (emphasis in original). "In other words, a claimant must be able to perform the full range of jobs in a given category" in order for the Commissioner to appropriately rely on the grids. Id.
>
> We have also held that "significant non-exertional impairments ... may make reliance on the grids inappropriate." Id. at 1101-02 (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 577 (9th Cir.1988)). A non- exertional impairment is an impairment "that limits [the claimant's] ability to work without directly affecting his [ ] strength." Desrosiers, 846 F.2d at 579.

Id. at 827-28.

This case concerns a step four analysis. Therefore, plaintiff's argument is inapposite. In finding that plaintiff could return to her past work as babysitter, the ALJ relied on the SSA determination. (Id. at 170-87.) That reviewer found that plaintiff could do medium work with non-exertional limitations of being able to occasionally climb, kneel, crawl, and push. (Id. at 187, 164.)[13] Plaintiff's claimed non-exertional impairments have all been considered and rejected in the previous sections. Additionally, plaintiff's claim that she can not speak English did not prevent her from performing work as a babysitter in the past. The ALJ was not required to call a vocational expert in this case.

---

[13] Dr. Miller's RFC limited plaintiff to lifting 30 pounds frequently and 40 pounds occasionally, which is considered light work. (Id. at 135, 20 C.F.R. § 404.1567.) The Dictionary of Occupational Titles categorizes baby sitter as medium work. DICOT 301.677-010. Plaintiff, however, has not raised this discrepancy as an issue and the court finds substantial evidence for the ALJ to rely on the SSA examiner's RFC rather than that of Dr. Miller.

## CONCLUSION

In sum, the court finds the ALJ's assessment is fully supported by substantial evidence in the record and based on the proper legal standards.  Accordingly, plaintiff's Motion for Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed to enter Judgment for the Commissioner.

DATED: 3/21/07

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Le2569.ss.wpd